**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CORINNE DAWSON et al.,

    Plaintiffs,

v.

MT. BRIGHTON, INC. et al.,

    Defendants.

_____/

Civil Action No. 11-10233

Honorable Denise Page Hood

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT,
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
AND
ORDER SETTING FINAL PRETRIAL CONFERENCE AND TRIAL DATES**

**I.**    **BACKGROUND**

On August 10, 2011, a First Amended Complaint was filed by Plaintiffs Corinne Dawson, individually and as co-Next Friend of A.M., a minor, Peter Miles, co-Next Friend of A.M., a minor, Justine Miles and Dwaine Dawson against Defendants Mt. Brighton, Inc. and Robert Sturgis alleging: By A.M., by and through his Co-Next Friends, Statute Violations against All Defendants under the Michigan Ski Area Safety Act, M.C.L. § 408.326a (Count I); By Corinne Dawson, Dwaine Dawson and Justine Miles, Statute Violations by All Defendants under the Michigan Ski Area Safety Act, M.C.L. § 408.326a (Count II); By A.M., by and through his Co-Next Friends, Common Law Premises Liability against All Defendants (Count III); and, By Corinne Dawson, Dwaine Dawson and Justine Miles, Common Law Premises Liability against All Defendants (Count IV).

A.M., a 12 year old minor and a beginner skier, was at Mt. Brighton participating in a school sponsored ski trip on January 30, 2008. The temperature the day before and early morning hours

was over 40 degrees, but by 8:00 a.m. the temperature was less than 10 degrees, with strong winds. Mt. Brighton began grooming the grounds later than normal on January 30, 2008, because of the poor conditions the day before. Only two ski slopes were open, the two rope beginner ski slopes.

An employee of Mt. Brighton for about 8 years, Sturgis operated the grooming machine that day. (Sturgis Dep. at 19) Sturgis indicated that his main concern when operating the machine was the safety of skiers around the grooming machine while in operation. (Sturgis Dep. at 52) Sturgis was grooming with another operator, Mike Bergen. (Sturgis Dep. at 83) Bergen led the grooming, followed by Sturgis. They began by grooming the bunny slopes and intermediate slopes which were groomed prior to the opening of the resort that day. (Sturgis Dep. at 66-67, 83, 86)

Sturgis and Bergen also groomed the area described as the "black and red" slopes, which were closed. (Sturgis Dep. at 86) Sturgis and Bergen then went to groom the area called the "blue" slope, which was closed. (Sturgis Dep. at 87) The resort had opened by this time. The route to the blue slope from the black and red slopes took them along the Main Lodge. Sturgis testified that his groomer passed well below the bunny hill slope, located to his left. (Sturgis Dep. at 96-98) Sturgis saw two individuals on top of the bunny hill and two girls next to a pump house to his right. Sturgis maintained eye contact with the girls because they were closer to the grooming machine than the individuals on top of the bunny hill. (Sturgis Dep. at 98) As Sturgis was going around the pump house, a boy alongside the groomer was saying something about the tiller. Sturgis jumped out and saw A.M. under the tiller. Sturgis lifted up the tiller, shut the machine off and sought first-aid. Sturgis had no idea from whence A.M. had come. (Sturgis Dep. at 104-05)

A.M. testified that he received a lesson that day on how to start and stop on skis and had skied down the bunny slope several times with his friends. (A.M. Dep. at 30-31, 33-34). This was

2

A.M.'s second time skiing.  A.M. had been skiing in the beginner area and had seen the snow groomers.  (A.M. Dep. at 32-33)  A.M. indicated he was racing with another boy down the hill. When he reached the bottom, he turned around to say "I won" and that was the last thing he remembered.  A.M. testified that as he was going down the hill, he was trying to stop, "was slipping and trying to grab something."  (A.M. Dep. at 32-33)  A.M. struck the groomer and was entrapped in the tiller.  A.M. was dragged over 200 feet by the groomer.

This matter is now before the Court on Defendants' Motion for Summary Judgment. Plaintiffs filed a response, along with various documents, including "Plaintiffs' Separate Statement of Facts", Declaration of Larry Heywood, and Declaration of Timothy A. Loranger.  Defendants filed a reply.  Plaintiffs also filed a document titled "Plaintiffs' Evidentiary Objections and Motion to Strike" portions of Defendants' summary judgment motion.  Defendants replied to this motion. Defendants filed a Motion to Adjourn Scheduling Order Dates seeking adjournment of the December 4, 2012 trial date, to which Plaintiffs submitted a response that they did not object to the motion.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

   **B.**  **Michigan's Ski Area Safety Act**

Defendants argue they are entitled to summary judgment under Michigan's Ski Area Safety Act ("SASA") which bars recovery for any injuries under common law premises liability or negligence claims. Plaintiffs respond that because of Defendants' violation of SASA, specifically failing to post any signs that grooming was taking place, Defendants are not immune from liability under SASA. Plaintiffs also argue that SASA does not apply since the place where the incident occurred was not a ski run, slope or trail.

SASA was enacted in 1962. The purposes of SASA include, *inter alia,* safety, reduced litigation, and economic stabilization of an industry which contributes substantially to Michigan's economy. *Shukoski v. Indianhead Mountain Resort, Inc.,* 166 F.3d 848, 850 (6th Cir. 1999). The Michigan legislature perceived a problem with respect to the inherent dangers of skiing and the need

to promote safety, coupled with the uncertain and potentially enormous ski area operators' liability. *Id.* (citation omitted)  Given the competing interests between safety and liability, the legislature decided to establish rules regulating ski operators and the ski operators' and skiers' responsibilities in the area of safety.  *Id.*  The Legislature decided that all skiers assume the obvious and necessary dangers of skiing, limiting ski area operators' liability and promoting safety.  *Id.*  The statute states:

> (1) While in a ski area, each skier shall do all of the following:
> (a)     Maintain reasonable control of his or her speed and course at all times.
> (b)     Stay clear of snow-grooming vehicles and equipment in the ski area.
> (c)     Heed all posted signs and warnings.
> (d)     Ski only in areas which are marked as open for skiing on the trial board ...
>
> (2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary.  Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

M.C.L. § 408.342.  This subjection identifies two types of dangers inherent in the sport.  *Anderson v. Pine Knob Ski Resort, Inc.,* 469 Mich. 20, 24 (2003).  The first is described as natural hazards and the second as unnatural hazards.  *Id.*  Both types of examples are only examples because the Legislature used the term "dangers include, but are not limited to."  *Id.* at 25.

A.M. was injured by snow-grooming equipment, which is expressly noted in SASA. Plaintiffs argue that there was no sign posted regarding the use of snow-grooming equipment, as required in the statute, M.C.L. § 408.326(a), which states,

> Each Ski Area operator shall, with respect to operation of a ski area, do all of the following:

5

\* \* \*

> (f) Place or case to be placed, if snow grooming or snow making operations are being performed on a ski run, slope, or trial while the run, slope, or trial is open to the public, a conspicuous notice at or near the top of the entrance to the run, slope, or trail indicating that those operations are being performed.

M.C.L. § 408.326(a).

The Michigan courts have held that even if there are allegations that provisions of SASA were violated which may have caused injury, there is no limitation in SASA as to the risks assumed. *Rusnak v. Walker,* 273 Mich. App. 299, 307 (2006). *Rusnak* was a suit under SASA involving a collision between two skiers. In *Rusnak,* the Michigan Court of Appeals noted that, "the Legislature did *not* start off the subsection by stating 'except for violations of other sections of this act,' the skier assumes the obvious and necessary dangers inherent in the sport." *Id. (italics added).* The assumption of the risk provision in M.C.L. § 408.342 is "clear and unambiguous, providing that a skier assumes the risk of obvious and necessary dangers that inhere in the sport, and '[t]hose dangers' specifically include collisions" with snow groomers. *Id.*

The Michigan Supreme Court has made clear that the Legislature created a certainty concerning a ski area operator's liability risks. *Anderson,* 469 Mich. at 26. In a case where a skier collided at the end of a ski run with a shack that housed race timing equipment, the Michigan Supreme Court noted:

> To adopt the standard plaintiff urges would deprive the statute of the certainty the Legislature wished to create concerning liability risks. Under plaintiff's standard, after any accident, rather than immunity should suit be brought, the ski-area operator would be engaged in the same inquiry that would have been undertaken if there had been no statute ever enacted. This would mean that, in a given case, decisions regarding the reasonableness of the place of lift

> towers or snow groomers, for example, would be placed before a jury or judicial fact-finder. Yet it is just this process that the grant of immunity was designed to obviate. In short, the Legislature has indicated that matters of this sort are to be removed from the common-law arena, and it simply falls to us to enforce the statute as written. This we have done.

*Id.* There is no need to consider whether the ski operator retains a duty under common-law premises liability. *Id.* at 26-27. Plaintiffs' argument that Defendants violated SASA by failing to post the appropriate sign that snow grooming was taking place does not override the express assumption of the risk by the skier enacted by the Legislature.

The assumption of the risk provision as to groomers specifically, is "broad" and "clear" and "contains no reservation or limitation of its scope." *Rusnak,* 273 Mich. App. at 309. However, "[t]he actions or inactions of a defendant cannot always be irrelevant, for if they were, the duties and liabilities placed on individual skiers would have no meaning." *Id.* "Indeed, we cannot favor one section, such as the assumption-of-risk provision, over other equally applicable sections, such as the duty and liability provisions." *Id.* The *Rusnak* panel held that a plaintiff does assume the risks set forth in the statute. *Id.* The provisions must be read together while giving them full force and effect. *Id.* However, a plaintiff can still recover limited damages against a defendant if the plaintiff can prove that a defendant violated SASA, causing the injuries suffered by the plaintiff. *Id.* In such a situation, the defendant's acts would be relevant for a "comparative negligence" evaluation. *Id.* at 311. Depending on the facts, the actions of a defendant may be relevant for purposes of determining the allocation of fault and, perhaps damages. *Id.* at 313. Reading the provisions together is consistent with the plain language of the two provisions at issue, which conform to the legislative purpose of SASA–to reduce the liability of ski operators, while at the same time placing many, but not all, risks of skiing on the individual skiers. *Id.* at 314.

In this case, it is clear A.M. assumed the risk of skiing. However, A.M. has created a genuine issue of material fact as to whether there was a notice at or near the top of or entrance to the ski run, slope, or trail indicating that snow grooming operations were being performed as set forth in M.C.L. § 408.236a(f). There remains a genuine issue of material fact as to whether the incident occurred falls within the phrase, "ski run, slope, or trail." The State of Michigan Investigator and Defendants' expert, Mark Doman, stated at his deposition that the area where the incident occurred could be described as a "ski run, slope, or trail" even though Defendants argue that this area is a "transition area." (Doman Dep., p. 74) Summary judgment on the issue of notice under M.C.L. § 408.236a(f) is denied. Although there is no genuine issue of material fact that A.M. assumed the risk as to snow groomers under SASA, Defendants' actions as to their duties under M.C.L. § 408.236a(f) as to notice is relevant for purposes of determining the allocation of fault and damages under a comparative negligence analysis.

## III.    SANCTIONS

Defendants seek sanctions against Plaintiffs under the Court's inherent power. Defendants argue that Plaintiffs have no intention to follow applicable well established court and ethical rules, including: page limit; entering onto Mt. Brighton for inspection in violation of Fed. R. Civ. P. 34 without notice to Defendants; and having contact with the owner of Mt. Brighton without counsel in violation of the Michigan Rules of Professional Conduct 4.1 and 4.2. Defendants seek dismissal based on Plaintiffs' alleged pattern of discovery abuse. Defendants claim that Plaintiffs' counsel took an oath in this Circuit to follow the rules and practice with integrity, yet counsel had no plans to follow the oath and this Court must sanction Plaintiffs' counsel to deter any further continued conduct. Plaintiffs respond that they did not violate the court or ethical rules.

### A.     Page Limit

As to the page limit claim, Defendants argue that Plaintiffs violated Local Rule 7.1 regarding page limits since Plaintiffs submitted separate documents setting forth their version of "material facts" separate from Plaintiffs' response brief, in addition to other documents including "objection" to the summary judgment motion and "declarations" by Plaintiffs' experts.

Plaintiffs respond that as to the page limit issue, this matter was argued at the time the Court heard the summary judgment motion. In any event, Plaintiffs claim they did not exceed the page limit since Local Rule 7.1(d)(3) states that the text of a brief may not exceed 20 pages and that Plaintiffs' response brief was only 19 pages. Plaintiffs agree that the accompanying documents in support of their brief included declaration of expert witness, list of material facts, a motion to Defendants' report and objections to Defendants' purported "evidence." These documents are not part of their response "brief" but other documents supporting Plaintiffs' arguments. Plaintiffs argue that while there is nothing in the rules which requires the filing of a separate document of undisputed facts, there is nothing prohibiting such a filing.

Local Rule 7.1(d)(3) provides, "[t]he text of a brief supporting a motion or response, including footnotes and signatures, may not exceed 20 pages. A person seeking to file a longer brief may apply ex parte in writing setting forth the reasons." E.D. Mich. LR 7.1(d)(3). A review of Plaintiffs' "Response" to the Motion for Summary Judgment (Doc. #28) shows that the brief is only 19 pages, which does not violate Local Rule 7.1(d)(3). However, Plaintiffs did file other documents supporting their opposition including a separate document entitled "Plaintiffs' Separate Statement of Material Facts" (Doc. #29) which consists of 14 pages. This document highlights facts and source of the facts, including declarations and deposition page numbers. Plaintiffs also filed a

separate document entitled "Plaintiffs' Evidentiary Objections and Motion to Strike" (Doc. #30) which consists of 9 pages. Plaintiffs also filed two documents entitled "Declaration of Larry Heywood" (Doc. #31) and "Declaration of Timothy A. Loranger, Esq." (Doc. #32).

Defendants did not cite to any authority, other than the Court's inherent power, that violation of a Local Rule must result in dismissal of a case. It is noted that at the time of the filing of the response and other documents in September 2012, Defendants did not object to these filings by a separate motion until the instant motion which was filed on November 26, 2012. Defendants addressed the documents Plaintiffs filed in Defendants' reply brief and so argued at oral arguments. Generally, exhibits and declarations supporting motions or response briefs are "attached" as exhibits to the main brief. As to Plaintiffs' Separate Statement of Material Facts and Evidentiary Objections and Motion to Strike, these arguments should have been made in Plaintiffs' main brief.[1] These documents may have been filed to circumvent the page limit requirement. However, the Court has the discretion to allow filings separate from the parties' main brief. A violation of the page limit local rule does not support dismissal of the case as sanctions.

**B.     Rule 34**

Defendants argue that Plaintiffs violated Fed. R. Civ. P. Rule 34 regarding inspection of land when Plaintiffs' counsel went to Mt. Brighton, without notice to Defendants and their counsel on two occasions.

Plaintiffs admit that counsel visited Mt. Brighton property without providing any notice to the defense because Plaintiffs believed no such notice was necessary since Mt. Brighton was open

---

[1] The parties are referred to E.D. Mich LR 7.1 and CM/ECF Pol. & Proc. R5 and R18 governing filing of motions, briefs and exhibits. See, www.mied.usourts.gov.

10

to the public for business when they visited. Plaintiffs argue that Rule 34 only states that a party "may" serve a request to permit entry and that the rule does not state "must." Plaintiffs admit photographs were taken at that time, but that taking photographs was not prohibited by Mt. Brighton. Plaintiffs claim that admissions of these photographs at trial should be brought as motions in limine.

Rule 34 of the Rules of Civil Procedure provides:

> (a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
>
> * * *
>
> (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a)(2).

Generally, if a party seeks protection from certain discovery matters, that party usually files a Motion for protective order under Fed. R. Civ. P. Rule 26(c). Here, Defendants did not seek such protection, nor did Defendants object to Plaintiffs' entry of the land once they learned of the first instance in June 29, 2012 during the deposition of David Mark Doman wherein Plaintiffs' counsel admitted he had sent an agent to take pictures of Defendant's premises without notice to defense counsel. The instant Motion as filed in November 2012. Discovery rule violations are usually addressed under Rule 37. Defendants did not file a motion under Rule 37 to prohibit Plaintiffs from using any photographs they took in connection with any pre-trial proceedings at that time.

The second incident occurred on November 14, 2012, the same day oral argument was heard on the summary judgment motion. Joseph Bruhn, owner of Mt. Brighton, indicated he met three gentlemen who did not identify themselves but indicated they were there for "breakfast" even

11

though it was 11:00 a.m. (Bruhn Aff., ¶ 5) Mr. Bruhn indicated the restaurant was not open and later noticed the gentlemen were taking pictures from the deck. (Bruhn Aff., ¶ 8) Mr. Bruhn learned the gentlemen were lawyers from Los Angeles in town to attend facilitation of this matter to be held the next day, November 15, 2012. (Bruhn, Aff., ¶9) This second incident is troublesome. Although Mr. Bruhn did not identify himself as the owner of Mt. Brighton, Plaintiffs' counsel themselves knew the purpose of their visit–to inspect the property and take pictures.

In general, Rule 37(b)(2)(B) of the Rules of Civil Procedure provides for sanctions where a party fails to comply with a court order requiring the party to produce another person for examination, including prohibiting the disobedient party from introducing matters in evidence, striking pleadings, rendering default judgment against the disobedient party, treating as contempt of court the failure to obey an order or any further "just orders." Fed. R. Civ. P. 37(b)(2)(B); 37(b)(2)(A). Here, no order has been entered by the Court striking the photographs or finding that Plaintiffs violated Rule 34. The "spirit" of Rule 34 was violated in that Plaintiffs did not notify the defense they were inspecting the premises for discovery purposes, even if the property is open to the public. The property is private property, but open to the public. The lay of the land is at the core of these proceedings. Plaintiffs should have notified the defense they sought to inspect the land as required under Rule 34. "Trial by surprise" is not a tactic in civil actions and related discovery proceedings. However, dismissal of the case is not warranted at this time, but the Court will consider this matter at trial by way of a motion in limine or objection if any testimony or exhibit is sought to be introduced relating to Plaintiffs' first visit to Mt. Brighton. The second visit is addressed below.

    **C.**    **Violation of Michigan Rules of Professional Responsibility**

Defendants seek dismissal as sanctions because they allege that Plaintiffs' counsel violated the Michigan Rules of Professional Responsibility ("MRPC") by contacting Mt. Brighton's owner without counsel. Plaintiffs respond that when counsel visited Mt. Brighton unannounced, counsel did not know that the gentleman greeting him at the Mt. Brighton restaurant was Mr. Bruhn, the owner of Mt. Brighton. Mr. Bruhn informed counsel that the kitchen was not open but he never indicated that Mt. Brighton was closed. Plaintiffs' counsel then went out onto the patio to take a few photographs of the ski/golf area. Plaintiffs claim that Defendants admit in their moving papers that Plaintiffs did not violate MRPC 4.2 since there was no discussion of any aspect of the "subject of the representation" but that because counsel did not identify himself to Mr. Bruhn. Mr. Bruhn indicated in an affidavit that he did not learn of Plaintiffs' counsel identity until the facilitation in this matter the day after.

MRPC 4.2 provides, "In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Although Defendants admit that "arguably" Plaintiffs did not directly speak with Mr. Bruhn as to the "subject of the representation," Plaintiffs' counsel knew the reason they were on the premises was to take photographs of the property. Defendants seek an order from this Court finding that Defendants violated Rule 4.2 and that the proper sanction is to dismiss the case.

Although Plaintiffs' counsel, as noted by the defense, did not "arguably" violate Rule 4.2, the Court cannot expressly so find. Violations of the professional responsibility code must be brought under E.D. Mich. LR 83.22. Defendants have not sought such a formal request. The Court, however, under Fed. R. Civ. P. 37(b)(2), will not allow Plaintiffs to offer any photographs taken of

13

the property during the second visit to Mt. Brighton on November 14, 2012 since they knew the purpose of their visit was to take photographs and could have so indicated to opposing counsel, Mr. Bruhn or to any of Defendants' agents. Plaintiffs had notice since June 2012 and under the discovery rules that they were required to notify Defendants of any access to Defendants' property.

### D. Rule 11 Sanctions

In Plaintiffs' response, they indicate they may seek sanctions under Rule 11 themselves. Generally, Rule 11 provides that prior to requesting/filing a Motion for sanctions under this rule, the party must serve notice to the opposing party under the safe harbor provision of Rule 11. Fed. R. Civ. P. 11(c)(1)(A). Rule 11(c) states that the Motion shall not be filed if not submitted to the opposing party. Pursuant to the "safe harbor" provision in Rule 11, a party seeking sanctions under the rule must first serve notice to the opposing party that such a Motion will be filed. If either party seeks to file such Rule 11 sanctions, they must do so with the "safe harbor" provision in mind.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(Doc. No. 21)** is DENIED as more fully set forth above.

IT IS FURTHER ORDERED that the Motion to Adjourn Scheduling Order Dates **(Doc. No. 23)** is MOOT.

IT IS FURTHER ORDERED that the Motion to Strike Portions of Defendants' Summary Judgment Motion or Submit Evidence **(Doc. No. 30)** is DENIED.

IT IS FURTHER ORDERED that the Motion for Sanctions **(Doc. No. 39)** is GRANTED IN PART and DENIED IN PART. The second set of photographs is disallowed to be used as evidence

in this case. The request for dismissal as sanctions is denied.

IT IS FURTHER ORDERED that a **Final Pretrial Conference** date is scheduled for **Monday, June 10, 2013, 2:30 p.m.** The parties must submit a proposed *Joint* Final Pretrial Order by **June 3, 2013** in the form set forth in Local Rule 16.2. All parties with authority to settle must appear at the conference. The Magistrate Judge may reschedule the cancelled facilitation and submit a notice to the Court by **June 3, 2013** once facilitation is complete.

IT IS FURTHER ORDERED that **Trial** is scheduled for **Tuesday, July 9, 2013, 9:00 a.m.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 27, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

15